STEWART LAW GROUP
L. Marcel Stewart, Esq., SBN #250920
600 B Street, Suite 2050
San Diego, CA  92101
Tel: 619.702.4123
Email: LmsLaw@att.net

David Partovi, Esq., WSBA #30611
Attorneys for Ruben Galvan-Trujillo

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
(HON. MARY K. DIMKE)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO. 4:22-CR-6041-MKD-1 |
| Plaintiff, | ) ) ) ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT RUBEN GALVAN-TRUJILLO'S MOTION TO COMPEL DISCOVERY** |
| v. | ) ) ) | |
| RUBEN GALVAN-TRUJILLO (D1), | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

# I.
# INTRODUCTION

On November 22, 2022, the Court issued a Case Management Order requiring the production of discovery required by Rule 16 and *Brady* within 14 days of the issuance of the order. Consequently, the Government was required to produce discovery by December. However, the Government has not met the Court imposed deadline. While it has produced some documentary discovery, such as investigation reports, warrants and a few

1

22-CR-6041-MKD-1

translated calls, it has not produced "any" WhatsApp messages, audio or video recordings, pertaining to the drug transaction giving rise to the charges in this case. Instead, the Government offers only to play this audio and video for Mr. Galvan-Trujillo's ("Mr. Galvan") attorneys at its office, as the Government does not want Mr. Galvan to be able to review the material out of CS safety concerns. So, there is no impediment to the immediate production of this evidence, other than the Government's express unwillingness to do so.

Although Mr. Galvan does not make light of the Government's concern, its concern does not override Mr. Galvan's right to this essential material under Due Process and Rule 16, *Brady* and other relevant discovery law, particularly given that the Government brought two charges that squarely rest on this evidence. For these reasons, Mr. Galvan has filed this Motion.

## II.
## FACTS[1]

Mr. Galvan is one of three defendants charged in a two-count indictment. Count One charges conspiracy to distribute methamphetamine

---

[1] The alleged facts come from reports of investigation produced by the Government. Importantly, Mr. Galvan does not admit to the accuracy of these facts and reserves the right to challenge the facts set forth in the Government's reports at a later date.

and Count Two is a substantive distribution of methamphetamine Count. Based on the discovery produced to date, as well as representations made by the Assistant United States Attorney at Mr. Galvan-Trujillo's Detention Hearing, the conspiracy relates to the substantive Count involving the distribution of 20 pounds of methamphetamine that occurred on February 23, 2022, in Pasco, Washington. The Government has not produced any discovery indicating that there are any other drug transactions attributable to the "charged" conspiracy. However, the Government has made several vague and unsubstantiated allegations based on statements from its CS, regarding alleged narcotic transactions that do not appear to be attributable to the charged conspiracy.

Based on the Government's discovery, the charged conspiracy began in or around January 2022. At the behest of federal agents, the CS began contacting Mr. Galvan-Trujillo to induce him to participate in drug transactions. On information and belief, many of these initial communications between the CS and Mr. Galvan were neither recorded nor monitored by law enforcement. After several contacts by the CS inducing Mr. Galvan to engage in drug transactions, Mr. Galvan allegedly agreed to facilitate the charged drug transaction between a source of supply and the CS. Ultimately, it was allegedly agreed between Mr. Galvan and the CS that the CS would be "fronted" 20 pounds of methamphetamine. However, the

CS was required to pay $5,000 to the transporters at the time of delivery. There are a series of recorded calls and/or WhatsApp messages between Mr. Galvan and the CS leading up to the alleged narcotics transaction, on the day of the transaction, and after the alleged transaction relating to the narcotics.

Defendants Esteban Zavala-Bernal ("Defendant Zavala") and Angela Madrigal Chavez ("Defendant Madrigal") allegedly transported the drugs to Pasco, Washington. During the transportation process, there were several WhatsApp and recorded communications between Defendant Zavala and the CS. It is unclear whether there are written or recorded communications between Defendant Zavala and the CS.

Nevertheless, upon arrival, Defendants Zavala and Madrigal met the CS at a gas station and then followed the CS to a storage unit supplied by federal agents, where the drugs were allegedly unloaded from a secret compartment. This transaction was allegedly captured by the CS using audio and video recording devices. After Defendants Zavala and Madrigal departed, the CS was directed by federal agents to a meeting location, which was the DEA Post of Duty where the drugs and audio and video were recovered.

### III.
### MOTION TO COMPEL DISCOVERY

Defendant moves the Court to order the Government to produce the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any government agency. *See generally Kyles v. Whitley*, 514 U.S. 419 (1995); *United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989).

### A. Mr. Galvan Has a Right to Discovery Under Fed. R. Crim. Pro. 16

As the Court well knows, Federal Rule of Criminal Procedure 16 is the principal rule governing discovery in federal criminal cases. With regard to the production of a defendant's written or recorded statement, Rule 16(a)(1)(B) states: "Upon a defendant's request, the government must . . . make available for inspection, copying, . . . any relevant written or recorded statement . . . within the government's possession, custody, or control; and . . . the attorney for the government knows . . . that the statement exists." Thus, Mr. Galvan has a right to all of his relevant, written, or recorded statements that the Government possesses. Here, Mr. Galvan's statements include but are not limited to WhatsApp messages and recorded conversations between him and the CS. Moreover, if the Government claims it can redact the informant's portions of conversations, such antics would deprive Mr. Galvan of context and render the evidence confusing and incomplete for the jury. For these reasons, Mr. Galvan would have a right to

those portions under the Rule of Completeness. *See* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time.")

Additionally, "[u]pon a defendant's request, the government must permit the defendant **to inspect and to copy** . . . tangible objects, or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is **material to preparing the defense**. [or] **the government intends to use the item in its case-in-chief at trial.**" Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). Fed. R. Crim P. 16(a)(1)(E) (emphasis added); *See generally Kyles v. Whitley*, 514 U.S. 419 (1995); *United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989); *Brady v. Maryland*, 373 U.S. 83 (1963).

Here, because the sought communications *directly* relate to the charges in the Indictment, the materiality of the communications to Mr. Galvan's ability to prepare his defense is clear on its face and, therefore, should be produced. Moreover, the WhatsApp messages, audio and video recordings relating to the alleged drug transaction are certainly essential evidence that the Government will likely use in its case-in-chief. Thus, Mr. Galvan is entitled to the evidence.

**B.    Mr. Galvan Has a Right to *Brady* Information Relating to the Confidential Source**

Under *Brady*, the Government is required to disclose information that is favorable to the defendant and material to guilt or punishment. *Brady*, 373 U.S. at 87. The obligation covers not only exculpatory evidence but also information that could be used to impeach Government witnesses. *Giglio v. United States*, 405 U.S. 150, 154 (1972). Moreover, *Brady* requires the Government to disclose any benefits that are given to a Government informant, including any lenient treatment. *Giglio*, 405 U.S. at 150. Thus, to the extent that the Government contends that it may meet its disclosure obligation under *Brady* by providing a brief summary, a proposition we vehemently dispute, the clear text of Rule 16 requires that the Government allow the defense to "inspect and to copy" evidence that is material to the defense. Moreover, it is indisputable that *Brady* evidence is material to the defense. Thus, the law unequivocally requires that the defense be given an opportunity to inspect and copy the Brady discovery relating to the CS. Summary production is insufficient.

Therefore, Federal Rule of Criminal Procedure 16 and *Brady* require the Government to disclose all exculpatory and/or impeachment information about the CS. This information includes but is not limited to the CS's file, criminal history, as well as reports, memoranda, statements concerning the CS and his/her work on the instant investigation and other investigations, and payments to the CS. Moreover, any and all immigration documents demonstrating any immigration benefits, deportations, or removals, as well as the CS's A-File, if one

7

exists, must be disclosed as impeachment evidence under Federal Rule of Criminal Procedure 16 and *Brady*.

**C.    Mr. Galvan is Also Entitled to the Identity and Contact Information for the CS**

The seminal case addressing the Government's ability to shield the production of an informant's identity is *Roviaro v. United States*, 353 U.S. 53, 59-61 (1957). There, the Supreme Court has decided that the government has a ***limited*** privilege to withhold an informant's identity. *Roviaro*, 353 U.S. at 59-61 (1957) (emphasis added). When the informant's identity is "relevant and helpful" to the defense or is "essential to a fair determination of the case," the Government's privilege to withhold the identity of a confidential informant **"must give way."** *Id.* at 61-62 (emphasis added). Moreover, Disclosure of an informant's identity is proper when there is "more than a 'mere suspicion' of the value" of the informant's information. *United States v. Amador-Galvan*, 9 F. 3d, 1414, 1417 (9th Cir. 1993) (quoting *United States v. Williams*, 898 F.2d 1400, 1402 (9th Cir. 1990)).

In *Roviaro*, the defendant was charged with two counts. Count One charged that the defendant sold heroin to the confidential informant. Count Two charged the defendant with the transportation of the heroin. There, the confidential informant met with the defendant and drove the defendant to a location where the defendant exited the vehicle, walked a few feet to a nearby

tree, picked up a package, returned to the vehicle, and gave the package to the confidential informant. Once officers recovered the package from the confidential informant it was found to contain an opium derivative. In addition, one police officer was concealed in the trunk of the confidential informant's vehicle during the offense while two other officers tailed the vehicle and observed the defendant's actions. *Id.* at 56-58.

Before trial, the Defendant moved for a bill of particulars seeking the identity and contact information of the confidential informant. The motion was denied on the basis of the Informant's Privilege. *Id.* at 55-56. On appeal, the Defendant challenged the court's denial of his motion to disclose the identity and contact information of the informant. The Government conceded the error as to Count One but sought to have the convictions confirmed based on Count Two arguing the informant's identity was not material to the conviction on Count Two. The Supreme Court reversed the trial court, finding that the circumstances of the case demonstrated the confidential informant's "**possible testimony was highly relevant and might have been helpful to the defense**" and stated the "charge, when viewed in connection with the evidence. . .is so closely related" to the confidential informant, making his "**identity and testimony highly material**." *Id.* at 63-64. (emphasis added).

Additionally, although the *Roviaro* Court was primarily concerned whether the conviction could be affirmed solely on the basis of count two, the Court noted:

> We think that the court erred also in denying, prior to the trial, petitioner's motion for a bill of particulars, insofar as it requested John Doe's identity and address. Since Count 1 was then before the court and expressly charged petitioner with a sale of heroin to John Doe, it was evident from the face of the indictment that Doe was a participant in and a material witness to that sale. Accordingly, when his name and address were thus requested, the Government should have been required to supply that information or suffer dismissal of that count.

*Id.* at 65, n. 15; *see also United States v. Payan*, 2017 U.S. Dist. Lexis 129395 *18 (D. Nev. 2017) (citing *United States v. Forest*, 2013 U.S. Dist. LEXIS 36973 *13 (D. Nev. 2013) (finding that disclosure of informant's identity not required where the informant was not a percipient witness to the crimes charged in the indictment); *but see United States v. Williams*, 898 F.2d 1400, 1402 (9th Cir. 1990) (holding that there is no right to disclosure where the informant is relevant only to probable cause to search).

The circumstances in the instant case are similar to the circumstances in *Roviaro*. As in *Roviaro*, the CS is **the only percipient witness to many initial communications between CS and Mr. Galvan that are relevant to an entrapment defense**. To present an entrapment defense Mr. Galvan must be able to provide evidence that (1) the Government induced him to commit the crime;

10

22-CR-6041-MKD-1

and (2) an absence of predisposition on his part to commit the crime. *United States v. Poehlman,* 217 F.3d 692, 698 (9th Cir. 2000). Specifically, the CS can provide information relevant to whether the informant induced him to engage in the charged crime.

Here, the CS contacted Mr. Galvan on multiple occasions, pressuring him to engage in illegal activity, before Mr. Galvan allegedly agreed to participate. Importantly, on information and belief, many of the initial communications that bear on entrapment were neither recorded nor monitored by law enforcement. Therefore, there are communications that the Government does not possess and, therefore, the Government is unable to produce. Thus, as in *Rovario*, "[t]his is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged." *Id.* at 64. Therefore, the "**only person**" who could "controvert, explain, or amplify" the officer's report was the confidential informant. *Id*.

Additionally, as in *Roviaro*, the use of the conversations between the CS and the defendants before, during, and after the drug transaction "particularly emphasize[s] the unfairness of the nondisclosure," and the "desirability of calling [the CS] as witness, or at least interviewing the CS in preparation for trial was a matter for the accused rather than the Government to decide." *Id.*

## IV.
## CONCLUSION

11

22-CR-6041-MKD-1

Mr. Galvan respectfully requests that the Court compel the Government to comply with its obligations under Rule 16 and *Brady*, particularly as it relates to the production of messages, audio and video communications between the defendants and the CS concerning the charged crimes; *Brady* information relating to the CS; and the CS's identity and contact information.

Dated: December 13, 2022

                                      Respectfully submitted,

                                      /s/ L. Marcel Stewart
                                      L. MARCEL STEWART

                                      /s/David Partovi
                                      DAVID PARTOVI
                                      Attorneys for Mr. Galvan-Trujillo