Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Stephanie Van Marter
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:22-CR-6041-MKD |
| Plaintiff, | |
| vs. | UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO COMPEL DISCOVERY (ECF No. 50) |
| RUBEN GALVAN-TRUJILLO, | |
| Defendant. | |

Plaintiff, The United States of America, by and through Vanessa R. Waldref, U.S. Attorney for the Eastern District of Washington, and Stephanie Van Marter, Assistant United States Attorney for the Eastern District of Washington, submit this Response to dispute Defendant's Motion to Compel Discovery.

I. PROCEDURAL BACKGROUND

On September 8, 2022, Defendant, along with two Co-Defendants, was charged by Indictment with Conspiracy to Distribute 500 Grams or More of Methamphetamine (Count 1) and Distribution of 50 Grams or More of Actual (Pure) Methamphetamine

United States' Response to Defendant's Motion to Compel Discovery – 1

(Count 2), both ten-year mandatory minimum offenses. ECF 1. An arrest warrant was issued the same day. ECF 4.

On October 15, 2022, the Defendant was arrested in the Southern District of California and had his initial appearance on October 17, 2022. ECF 19.5. Defendant waived his identity hearing and was ordered detained. ECF 19.2, 19.3. On November 21, 2022, Defendant had his initial appearance in the Eastern District of Washington.

Since then, Co-Defendants Esteban ZAVALA-BERNAL and Angelica CHAVEZ have been arrested. Co-Defendant ZAVALA-BERNAL was arrested in the Central District of California and had an initial appearance on December 6, 2022. Assigned counsel was advised he waived identity hearing and was ordered detained. As a result, ZAVALA-BERNAL is being transported to the Eastern District of Washington. The assigned AUSA has inquired as to his status with the United States Marshalls Office and has not received an indication as to when he will arrive for his initial appearance in this district. ZAVALA-BERNAL has not yet been appointed counsel.

On December 7, 2022, Co-Defendant CHAVEZ was arrested and made an initial appearance on December 8, 2022. Defense counsel Robin Emmans was appointed to represent Ms. CHAVEZ. CHAVEZ was also ordered detained.

**II.    STATUS OF DISCOVERY**

On November 18, 2022, the first round of discovery was produced in this case. Two additional sets of disclosures have been provided on December 13, 2022 and

United States' Response to Defendant's Motion to Compel Discovery – 2

December 19, 2022.  *See*, Attachment A, Third Discovery Production letter.  Included within this production, are side by side transcripts of the recorded communications between the Confidential Source (hereafter CS) utilized in this investigation and Defendants.

Since this investigation is evolving and ongoing, in part due to the recent arrests, new investigative leads and interviews, the United States has advised counsel for Defendant GLAVAN-TRUJILLO that discovery is ongoing. *Id.*  The United States has also advised counsel of the standing practice in this district when it comes to the disclosure of CS identities, consistent with the numerous case management orders which do not order CS identity disclosure until two to three weeks prior to trial, absent extenuating circumstances.  *See*[1], 4:22-CR-06003-MKD (ECF 106); 4:22-CR-6041-MKD-3(ECF 48); 4:20-CR-06030-MKD-3 (ECF 87); 4:21-CR-6028-MKD-7 (ECF 185); 4:20-CR-06003-SMJ-01(ECF 34); 4:19-CR-06046-SMJ (ECF 16); 4:15-CR-06049-EFS (ECF 740).  The United States further advised the following categories of discovery are, therefore, not yet complete:

1) *New reports which would relate to the then redacted Co-Defendants*.

As indicated above, the two co-defendants have now been arrested. The United States has not received any substantive reports from ZAVALA- BERNAL's arrest but

---

[1] These are simply a few examples of case management orders which effectuate this practice.  The United State understands the Court will assess this motion to compel based upon the facts of this case.  These are simply cited to establish the United States' discovery practice here is consistent with the District practice.

United States' Response to Defendant's Motion to Compel Discovery – 3

have inquired if any exist. The discovery produced thus far has named ZAVALA-BERNAL as well as CHAVEZ in unredacted form.

As to CHAVEZ, the DEA applied for and obtained search warrants that were executed the day of her arrest, December 7, 2022. The discovery as to that execution is still being compiled however, the search warrant affidavits were provided in production 3 on December 19, 2022. *Id.*

During this investigation involving Defendant and the subject of Count 2, a twenty-pound methamphetamine delivery occurred that was ordered and orchestrated by the Defendant. Defendant agreed to sell the CS twenty pounds of methamphetamine and arranged for the methamphetamine to be transported and delivered by co-defendants ZAVALA-BERNAL and CHAVEZ. *See,* Attachment B (Discovery Pages 00000004-00000004.56). ZAVALA-BERNAL and CHAVEZ arrived at the meet, in what was later described in affidavits, as TARGET VEHICLE. There was a secret compartment utilized to store the 20-pounds of methamphetamine and accessed by CHAVEZ and ZAVALA BERNAL to make the delivery to the CS. *Id.* at pgs. 17-25. A search warrant was obtained for TARGET VEHICLE, which was also located on December 7, 2022. It was searched pursuant to the search warrant that day. Agents located the following inside the secret compartment: approximately 2 kgs of Cocaine, 1 kg of Heroin, 8,000 fentanyl laced pills. The reports associated with these seizures, to include additional search warrants for cellular phones seized, and lab results will be provided as soon as received.

United States' Response to Defendant's Motion to Compel Discovery – 4

2) *Identification of the CS, including the production of audio/video evidence that reveals the CS' identity.*

The United States advised counsel for GALVAN TRUJILLO that it would not produce discovery materials at this stage of the case that would specifically identify the CS based upon the substantial safety risk posed to the CS. However, the following has been provided (not an exhaustive list): DEA reports of interviews of the CS; summaries of the recordings between the CS and Defendants; screen shots of some messaging between CS and Defendants; the CS pedigree and basis for cooperation, which is summarized in Attachment B at pgs. 11-13; information which could be corroborated as to CS; and Side by Side transcripts of recorded communications.

It is important to note that there are approximately 30 hours of recorded calls in the case in total, and about 15 hours of recorded communication between the CS and GALVAN TRUJILLO. These are all in the Spanish language. As a result, the completed side by side transcriptions which have been produced, involve the material events of the investigation to include the recorded conversations leading up to the 20-pound delivery, the actual controlled delivery recordings (during which GALVAN-TRUJILLO was called by Co-Defendant ZAVALA- BERNAL) and the post-controlled buy communications by GLAVAN TRUJILLO to the CS regarding the payment for the 20-pound delivery.

//

//

United States' Response to Defendant's Motion to Compel Discovery – 5

Given the voluminous nature of the recordings, not all recordings have been translated and transcribed at this time, however, they have been summarized in reports[2]. *See,* Attachment C, Discovery Pages 1000008-10000008.08 (as an example).

The United States has offered to play *all* the recordings for defense counsel. The only requested limitation is to not play them for his client to protect the identity of the CS. Defense counsel has declined to set up a time to review the actual audio and video recordings and instead, filed the instant motion.

3) *Lab Reports and Other Expert Materials*.

The United States has produced the lab results from the 20-pound delivery. As indicated above, the recent drug seizures have been sent to the DEA lab, but results have not yet been received. The United States will also obtain the underlying Rule 16 raw data for the tests results (unless there are stipulations by the parties) and disclose those materials pursuant to the case management order. The United States anticipates that given the recent arrests and conversation with counsel; the case will be continued upon conference with the parties.

4) *Additional Reports of Cooperating Defendants and/or Witnesses*.

The United States anticipates that as this case progresses, there may be newly identified cooperating witnesses and/or defendants. If that occurs, those reports will be provided once received. Depending on the status of that individual, the United

---

[2] The United States is not aware of any *Brady* materials or statements contained in any of the recorded calls. *See also*, Attachment C as example.

United States' Response to Defendant's Motion to Compel Discovery – 6

States will likewise request to protect their identity as well until prior to trial but will disclose all other information to include the basis for their cooperation, their pedigree and a summary of their proposed statements.

### III. DISCUSSION

The United States has provided and will continue to provide discovery in this matter as ordered by the Court (ECF 31) and in accordance with its obligations under *Brady v. Maryland* and its progeny.[3] *See generally* 272 U.S. 83 (1963).

Here, Defendant demands production of all the recorded communications in the investigation as well as the identification of the CS, to include contact information, under both Fed. R. Evid. 16 and under Fed. R. Evid. 106's rule of completeness. ECF No. 50-1 at 5, 6. Defendant asserts these items must be produced at this time as they are "essential material" yet fails to articulate how the other voluminous discovery that was provided does not adequately provide that same information to Defendant.

The United States agrees that Defendant has a right to review discovery yet does not agree that he entitled, at this stage of the litigation, to produce information in the form Defendant demands. The Defendant has been provided all the material information, to include side by side translations of the recorded contacts with

---

[3] As noted in the Discovery Letter, the United States outlines that discovery is an ongoing process and will notify the Defendant if they obtain a document which has not already been produced.

United States' Response to Defendant's Motion to Compel Discovery – 7

Defendant. The only information withheld at this time, is audio video recordings which expressly identify the CS; however, this material has otherwise been made available to defense counsel for inspection.

The Defendant has failed to articulate what information he is missing that prohibits his ability to substantively review discovery or which would constitute a *Brady* violation that would outweigh the concerns over the CS' safety. Should this case take a trial posture, the United States acknowledges all recordings must be produced to Defendant as well as the identification of the CS. However, at this stage, the motion is simply premature.

    A. **Defendant Fails to Establish a Violation of Rule 16; Fails to Establish any *Brady* Violation and Fails to Assert a Sufficient Basis to Outweigh Concerns as to the Safety of the CS.**

Federal rules of Evidence, Rule 16 reads as follows:

(a) Government's Disclosure.
(1) Information Subject to Disclosure.
(A) Defendant's Oral Statement. Upon a defendant's request, the government must disclose to the defendant *the substance of any relevant oral statement* made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.
(B) Defendant's Written or Recorded Statement. Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, **or** photographing, all of the following:
(i) any relevant written or recorded statement by the defendant if:
• the statement is within the government's possession, custody, or control; and
• the attorney for the government knows--or through due diligence could know--that the statement exists;
(ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in

United States' Response to Defendant's Motion to Compel Discovery – 8

response to interrogation by a person the defendant knew was a government agent; and
(iii) the defendant's recorded testimony before a grand jury relating to the charged offense.

Federal Rule of Criminal Procedure 16(e) provides criminal defendants a "broad right to discovery" of documents that are "material to preparing the defense." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). Materiality is met when a defendant puts forward specific facts showing the information is helpful in preparing a defense. *United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995). However, this right is not absolute, especially when the information requested pertains to the identity of a CS or informant. *Rovario v. United States*, 353 U.S. 52, 59 (1957). The Supreme Court, followed but precedent across the Circuits, have reinforced the Government's right to withhold the CI's identity. *Id; See* also *United States v. Williams*, 898 F.2d 1400, 1402 (9th Cir. 1990); *United States v. Rowland*, 464 F.3d 899, 909 (9th Cir. 2006).

In *Roviaro*, the Supreme Court held that an informant's identity must be revealed whenever it "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id.* at 60–61, 77 S.Ct. 623. But the right is not absolute. "[N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id*. at 62, 77 S.Ct. 623. The Court must examine "the particular circumstances of each case, taking into consideration the

United States' Response to Defendant's Motion to Compel Discovery – 9

crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* The defendant's need for information must be balanced against the value of ensuring the safety of informants. See *United States v. Napier*, 436 F.3d 1133, 1136 (9th Cir.2006) (citing *Roviaro*, 353 U.S. at 60–64, 77 S.Ct. 623); see also *Rowland*, 464 F.3d at 909; *United States v. Sai Keung Wong*, 886 F.2d 252, 256 (9th Cir. 1989).

The Defendant bears the burden of establishing a need for the disclosure. *Wong*, 886 F.2d at 256. Where a defendant "has failed to articulate any substantial reason" why he should be entitled to the confidential information, disclosure is not appropriate. *Napier,* 436 F.3d at 1139; See also *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir.1983); *United States v. Garcia-Salas*, 126 F. App'x 811, 812 (9th Cir. 2005)( finding the Defense needs concrete evidence of a firm theory to request the identity of a confidential informant); *United States v. Williams,* 791 F.2d 1383, 1387 (9th Cir.1986) (finding a prison informants safety outweighed their identity). In fact, "mere suspicion" is not enough to require government disclosure. *United States v. Sanchez*, 908 F.2d 1443, 1451 (9th Cir.1990) (quoting *United States v. Johnson,* 886 F.2d 1120, 1122 (9th Cir.1989)).

Here, the United States has provided the statements of the Defendant in report form and in side-by-side translations as well as made the actual recordings available for defense counsel to inspect. The only items not produced at this time, are items which identify the CS. The Defendant has failed to establish how, at this stage of the

United States' Response to Defendant's Motion to Compel Discovery – 10

proceedings, this voluminous production is insufficient to meet the requirements of Rule 16 and has further failed to articulate other than a general conclusion, that there is any violation of the Government's *Brady* obligations.

Defendant asserts that he is entitled, at this stage, to the identity and contact information as to the CS, more specifically, that he is entitled to "inspect and copy" material as to the CS and, further, that "summary production" is insufficient. ECF 50-1, at pg. 7. It is unclear where Defendant is getting the authority to apply the "inspect and copy" as to tangible objects, to a video image or name revealing the identity of a CS. Moreover, the "summary" referred to by the Defendant oversimplifies what has been provided by way of the CS' agreement to cooperate and any consideration in cooperating, otherwise known as *Brady* and *Giglio* material pertaining to the CS' cooperation.

From the initial discovery disclosure, the Defendant has been advised in detail, the basis of the CS' cooperation articulated as the CS' pedigree as well as further detailed in the investigative reports. *See*, Attachment B at pgs., 10, 11. This includes the CS' own criminal conduct, the quantity of drugs seized from the CS, the federal charges against the CS, the agreement to cooperate in consideration of those federal charges, any prior work done by the CS, the corroboration of CS's statements and their criminal history. Defendant has failed to articulate what *Brady* information has not been provided and further any case law which supports his argument that he is entitled to "inspect and copy" what he calls the "Brady Discovery" without any

United States' Response to Defendant's Motion to Compel Discovery – 11

further description.

As to the actual audio/video recordings, Defendant again does not accurately reflect the status of discovery to the Court. First, the CS was *not* the only witness to the recorded communications between the CS and Defendant as he alleges. In most instances, the CS was monitored real time by Federal Task Force Officers and DEA Agents, who were listening or had the ability to listen to the communications with the Defendant. All operational communications involving the CS and the Defendant, , i.e. those done during any in person meet or controlled buys, were recorded real time and in the presence of Spanish speaking officers and agents. Thus, their reliability is not in question.

Defendant has been given side by side translations of the conversations surrounding the material events of the investigations. Again, the United States has expressly offered to counsel the ability to review and inspect all the recordings at the DEA Richland office. At this point, there has been no effort made by the Defense to review the materials.[4] Nor is it clear from the Defendant's motion as to why the side-by-side translations do not address his need to review Defendant's statements, especially since the audio recordings are all in the Spanish language. The side-by-side translations would allow counsel to determine if there are any disputes as to the translations. In the event any dispute is identified, the United States would not object

---

[4] This contradicts Defendant's statement that Defendant has been denied discovery.

United States' Response to Defendant's Motion to Compel Discovery – 12

to providing the recording to defense to have a separate translator review the materials, so long as Defendant is not provided a copy with which to identify the CS.

Defendant further claims he is entitled to the audio/video evidence and the identity of the CS as it is material in exploring his defense, specifically the defense of entrapment.  As noted above, in approximation, there is over 15 hours of recorded communications between the Defendant and the CS and over 30 hours associated with the entire investigation. The CS' phone was equipped with a specific law enforcement recording device to capture any recordings that would have been made between the CS and Defendants over the phone. If these calls were made, the case agent is notified and can listen real time to that call. Further, as noted above all operational communications, are done in the presence of the agents and occur real time.  This equipment does not allow for the CS to alter or manipulate the recordings.  Again, providing reliability to the recordings and an ability for the Defendant to investigate any defense of entrapment as the calls are all times stamped and dated. The summary of all the calls as provided in discovery further provides a timeline of when the calls were made.

The Defendants and the CS, also communicated via What's App where the communications were captured via screen shot from another device, which have also been provided in discovery. Given the robust nature of what was captured, had there been other communications between the Defendant and the CS unknown to law enforcement, they would have been referenced in the recordings.  In other words,

United States' Response to Defendant's Motion to Compel Discovery – 13

Defendant's claim these materials are required to investigate a possible entrapment defense, is unsupported.

The United States is prepared to offer the testimony of SA Deitering as to the scope of the organization, the Defendant's role in the organization and the risk posed to the CS should their identity be *prematurely* revealed. As the Defendant knows, the scope of the organization as described by the Defendant, is significant. The fact that 20 pounds was negotiated and delivered on the first controlled buy, is also significant. Given the scope of this organization, any person who cooperates, as the CS did here, places themselves at substantial risk for retaliation[5]. As captured in one of the produced transcripts, the Defendant describes wanting to take property away from a subject in Mexico he believed to be associated with the CS in relation to the debt owed for the 20-pound deal. *See*, Attachment D, Discovery Pages 40000004-40000004.27 at pgs. 10-16. In fact, during that conversation, an unknown male becomes party to the

//

//

---

[5] Going into more specific risks to the CS at this time, would further tend to reveal their identity. However, based upon the historical connection the CS and Defendant had, if the CS' identity were revealed, the Defendant would know and have access to several family members to include the CS.

United States' Response to Defendant's Motion to Compel Discovery – 14

call between the CS and Defendant and states the following:

| | | | |
|---|---|---|---|
| UM 1: | ...un puto cholo como yo... primo, mándele un puto cholo como yo... | UM 1: | ...a fucking thug like me... cousin, send him a fucking thug like me... |
| | [VOCES ENTRECRUZADAS] | | [VOICES OVERLAP] |
| UF: | [I/I] | UF: | [U/I] |
| UM 1: | ...se le barren los putos huevos al cabrón. | UM 1: | ...that'll scare the fucking shit out of him. |
| GALVAN: | Sí. A ver, hay que poner un bato que le hable. Le... y le... y que se vayan a los recios. Que le diga: "Vengo a cobrarte". No, sí le voy a mandar pero otras 15. | GALVAN: | Yeah. Let's see, let's have a thug give him a call. And.. and he... and they get to fucking do it. He can say, "I'm here to collect." No, I will send him another 15. |

*Id.* at pg. 16.

    The Defendant then had numerous other people contact the CS (documented in several DEA reports) to get the CS to pay the debt owed.  These are simply tangible examples of the retaliation ordered by Defendant and the scope of his reach, in that case, over just money not the loss of liberty. The risk to the CS here is substantial if premature disclosure is ordered.

    The United States acknowledges that the identity of the CS will have to be produced should this case go to trial, as well as the underlying recordings.  This will also include disclosure of reports and materials that lead to the CS' arrest, to include any plea agreements or other written considerations from the United States.  However, the timing of this disclosure, can and should be weighed by this Court considering the substantial risks to the CS should their identity be revealed at this early stage of the case.

United States' Response to Defendant's Motion to Compel Discovery – 15

In this case, much of the Defendant's arguments are "mere suspicion" and do not account for the voluminous information that has been provided. The issue here, is the timing of this request balanced by what has already been produced, what has been offered for inspection and the substantial risks posed to the CS should their identity be prematurely disclosed. When balanced in accordance with *Roviario*'s standards, the CS' and the public's safety outweighs Defendant's reasoning. Ergo, the CS' information and identity should be left confidential.

## CONCLUSION

The United States respectfully requests the Court deny Defendant's motion at this time, with right to renew.

Dated: December 20, 2022.

                                          Vanessa R. Waldref
                                        United States Attorney

                                        *s/ Stephanie Van Marter*
                                        Stephanie Van Marter
                                        Assistant U.S. Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David R Partovi davepartovi@gmail.com & partovilaw@gmail.com

L Marcel Stewart lmslaw@att.net

Robin Collett Emmans robin.emmans@secondstreetlaw.com

*s/ Stephanie Van Marter*
Stephanie Van Marter
Assistant U.S. Attorney