1

2

STEWART LAW GROUP
L. Marcel Stewart, Esq., SBN #250920
600 B Street, Suite 2050
San Diego, CA  92101
Tel: 619.702.4123
Email: LmsLaw@att.net

3

4

5

6

David Partovi, Esq., Local Counsel

7

Attorneys for Ruben Galvan-Trujillo

8

9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
(HON. MARY K. DIMKE)

10

11

UNITED STATES OF AMERICA        )    CASE NO. 4:22-CR-6041-MKD-1
                                )
                                )
                                )    **REPLY IN SUPPORT OF**
          Plaintiff,            )    **DEFENDANT RUBEN GALVAN-**
                                )    **TRUJILLO'S MOTION TO**
     v.                         )    **COMPEL DISCOVERY**
                                )
                                )
RUBEN GALVAN-TRUJILLO (D1),     )
                                )
                                )
                                )
          Defendant.            )
_____ )

12

13

14

15

16

17

18

19

20

**I.**

21

**INTRODUCTION**

22

23

The Government acknowledges that it must produce the audio and

24

video recordings, but claims that it should not be required to produce it so

25

26

early in the proceedings, because doing so "increases" risk to the CS.

27

However, it does not demonstrate how producing discovery now, as opposed

28

to a month or so from now (assuming the Government does not want to run

1

22-CR-6041-MKD-1

afoul of the Speedy Trial Clock by intentionally delaying discovery production and, therefore, Mr. Galvan's ability to investigate his defense and timely prepare for trial), has any real impact on risk to the CS.[1]

Moreover, the Government claims that offering to allow defense "counsel" to review the audio and video empowers, but not the Defendant, complies with federal criminal discovery law or the United States Constitution's promise of Due Process.

Finally, Attachment C to the Government's Response and Opposition belies its claim that all material communications between the CS and Mr. Galvan were recorded, as the CS who has previously been working for the Government as a CS before the transaction at issue, contacted Mr. Galvan on multiple occasions to **before monitoring began** to induce Mr. Galvan to engage in a drug transaction. This fact is sufficient to meet the minimal showing required to trigger *ex parte in camera* interview of the CS by the Court.

//

//

//

---

[1]    The three discovery productions have been rather small, not "voluminous," totaling a few hundreds of pages. If there is voluminous discovery, Mr. Galvan respectfully requests that it be produced without further *intentional* delay.

22-CR-6041-MKD-1

## II.

### FEDERAL RULE OF CRIMINAL PROCEDURE 16 AND *BRADY* DO NOT AUTHORIZE THE GOVERNMENT TO MEET ITS DISCOVERY OBLIGATION BY PROVIDING SUMMARIES OR PURPORTED TRANCRIPTIONS OF EVIDENCE IN LIUE OF MAKING THE ACTUAL EVIDENCE AVAILABLE FOR INSPECTION, COPYING OR PHOTOGRAPHING BY THE DEFENDANT

Importantly, Rule 16 gives the "Defendant," not his attorney, certain discovery rights. In relevant part, Federal Rule of Criminal Procedure 16 states:

> B) Defendant's Written or Recorded Statement. Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
>
> (i) **any relevant** written or recorded statement by the defendant if:
> • statement is within the government's possession, custody, or control; and
> • the attorney for the government knows—or through due diligence could know—that the statement exists.

Fed. R. Crim. P. 16(B)(i).

As is clearly evident, there is no language allowing for production of "summaries," or "transcriptions" of recorded statements in lieu of producing the recorded statement. Additionally, there is no materiality requirements for production. Instead, mandatory production of the Defendant's recorded statements is triggered by: 1) the Defendant's request, 2) the Government's possession; and 3) the Government's knowledge of the recorded statements. Here, are three prongs are satisfied. Moreover, as the Court well knows, relevance which is construed exceedingly broadly for discovery purposes. Here, there can be no *reasonable* dispute that all 15 hours or so of recorded audio communications, as well as all written communications via any platform such as WhatsApp, text, Facebook etc. between a CS and the Defendant in an

3

22-CR-6041-MKD-1

investigation resulting in the Defendant being charged with drug trafficking crimes carrying ten (10) year mandatory minimum sentences, relating to drug transactions involving the CS is relevant to the defendant. Importantly, Mr. Galvan requests either a download of the device containing the WhatsApp messages or that he be able to inspect, copy or photograph the messages. Again, as with the recordings, Mr. Galvan should not have to rely on the Government's secondhand reproduction of the evidence.

A second, *independent* basis for production of discovery is when the discovery is material to the defense. In this regard, Rule 16(a)(1)(E) provides:

> Upon a defendant's request, the government must permit **the defendant** to inspect, copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is **material to preparing the defense**.[2]

Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). Fed. R. Crim P. 16(a)(1)(E) (emphasis added); *See generally Kyles v. Whitley*, 514 U.S. 419 (1995);

---

[2] The Government argues that it can satisfy its Rule 16 obligation by allowing "the Defendant" to inspect the evidence and that production is not required. Even assuming that production is not required, "the Defendant," not defense counsel has the right to view the evidence. I am sure the Court can appreciate that a Defendant facing two, 10-year mandatory minimum charges can become confused and distrustful of not only the Government, but potentially his own counsel, if he is refused the ability to review critical evidence against him. Here, the only way "*the defendant*" can inspect the discovery is if he is released from custody and allowed to go to a location designated by the Government where his is provided reasonable opportunity to inspect the evidence. The Government has not adduced any law indicating that it can deprive "the Defendant" of his right and "*force"* him to delegate that right to his counsel.

22-CR-6041-MKD-1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989); *Brady v. Maryland,* 373 U.S. 83 (1963). This section of Rule 16 extends to all tangible evidence, not just the Defendant's recorded statements. This would include, but not be limited to, recorded statements and video between the CS and other defendants in this case, as well as *Brady* material.

Under *Brady*, the government is required to disclose information that is favorable to the defendant and material to guilt or punishment. *Brady*, 373 U.S. at 87. The obligation covers not only exculpatory evidence but also information that could be used to impeach government witnesses. *Giglio v. United States*, 405 U.S. 150, 154 (1972). Moreover, *Brady*, requires the government to disclose any benefits that are given to a government informant, including any lenient treatment. *Giglio*, 405 U.S. at 150. Thus, to the extent that the Government contends that it may meet its disclosure obligation under *Brady* by providing summaries, Mr. Galvan disputes that position. The relevant law unequivocally requires that "the Defendant" be given an opportunity to inspect, copy or photograph all discovery material to the defense.

However, rather than comply with the aforementioned requirement to allow "the Defendant" to inspect, copy or photograph the material evidence, the Government only offers to allow "defense counsel" not "the Defendant" to review the evidence at its office, as if "the Defendant" does not have a Rule 16 and Due Process right to review the evidence against him. Additionally, the Government wants to unilaterally limit 'the Defendants" access to some 15 hours of communications between him and the CS, deciding that much of it is not material to the defense. Although Mr. Galvan believes that these recordings are material to his defense, as noted above, Mr. Galvan's recorded statements only need be relevant. Moreover, it is inappropriate for the Government to attempt to insert its judgment of what evidence is most important, useful and persuasive for "the

22-CR-6041-MKD-1

Defendant," rather than allow that determination to be made by Mr. Galvan and his attorney in confidential consultation. Mr. Galvan does not consent to this infringement upon his rights.

For this reasons, Mr. Galvan moves the Court to compel the Government to produce the actual Rule 16 and *Brady* discovery, so Mr. Galvan, who is in custody, may review the actual evidence against him (not summaries, reports, *purported* word for word transcriptions and/or translation prepared by the Government) with his attorney.

Importantly, with regard to Brady relating to the CS who is not only a percipient witness, but involved in the transaction, Mr. Galvan requests to inspect, copy or photograph the actual discovery, the "basis for the CS's cooperation and pedigree is not sufficient." Mr. Galvan is entitled to review the actual and complete Brady documentation relating to the CS. The requested Brady discovery includes, but is not limited to:

- The written agreement or documentation memorializing the CS agreement to work as a confidential source for the Government;

- Documentation concerning all payments made to the confidential informant;

- All documentation memorializing immigration benefits provided to the CS by the Government, including but not limited to Significant Public Benefit Parole **and** documentation submitted in support of the CS's application for asylum or other relief from deportation that refers to the CS's service to the Government that may have been considered by the Government in granting the CS relief from deportation.

22-CR-6041-MKD-1

1

## III.

## DISCLOSURE OF THE CONFIDENTIAL SOURCE'S IDENTITY, EXCULPATORY AND/OR IMPEACHMENT INFORMATION, AND PRODUCTION OF THE CONFIDENTIAL SOURCES CONTACCT INFORMATION ARE RELEVANT, HELPFUL AND ESSENTIAL TO MR. GALVAN'S DEFENSE

The precedent set forth in *Roviaro* has continued to remain controlling law in cases regarding the disclosure of confidential informants. The Ninth Circuit found that a state courts' decision permitting the Government to withhold the identity of a confidential informant, **who had helped set up the commission of a crime and was present at its occurrence**, was contrary to clearly established federal law ad determined by the Supreme Court. *Gupta v. Runnels*, No. 03-56542, 2004 U.S. App. LEXIS 22562, at *3 (9th Cir. Oct. 29, 2004) (unpublished) (emphasis added) citing *Roviaro*, 353 U.S. at 60 – 61.

In *Grupta*, court stated the "circumstances" in the case before it were "substantially similar" to those presented in *Roviaro* and stated a review of the record made it "clear that disclosure" of the confidential informant's identify and "the ability of defense counsel to interview" the confidential informant "would have been relevant and helpful to Gupta's defense." *Id.* at *4. The court stated that because the confidential informant was a participant and material witness to the transaction, the trial court committed prejudicial error in permitting the nondisclosure.

Moreover, during an *ex parte in camera* examination the confidential informant admitted to participating in setting up the transaction, that he himself had more than one conversation with the defendant, that he was present during the transaction, and that the defendant had expressed reservations and hesitation about moving forward with the transaction. *Id.* at *4. Further, an *in camera* examination of a law enforcement officer involved in the case revealed that the

7

22-CR-6041-MKD-1

confidential informant was awaiting trial on a narcotics violation and cooperated as a confidential informant with the hope of benefiting his own case. *Id.* at *5.

Mr. Galvan's case is similar to the Ninth Circuit cases previously discussed in that the <u>Roviaro</u> precedent should be applied in ruling on Mr. Galvan's requests for disclosure.

### 1. *Mr. Galvan Has Identified a Specific Defense and Established How the Disclosure of the Confidential Informant Would be Helpful and Relevant to This Defense*

In *Roviaro*, the court found the informant's testimony could disclose an entrapment in a situation where a confidential informant has "helped to set up the criminal occurrence and had played a prominent part in it." *Id.* at 64. As the Court knows, to present an entrapment defense Mr. Galvan must be able to provide evidence that (1) the Government induced him to commit the crime; and (2) an absence of predisposition on his part to commit the crime. *United States v. Poehlman,* 217 F.3d 692, 698 (9th Cir. 2000).

Here, the confidential informant is the only person, other than Mr. Galvan, that can provide information about the interactions between Mr. Galvan's and the confidential informant, before the communications began being monitored. See Gov. Response Attach. C at 2 ¶ 3-4. Mr. Galvan cannot fully explore his entrapment defense without the confidential informant's identity and the ability to interview the confidential informant. Thus, Court should require disclosure of the identity and contact information for the confidential informant, so the informant can be interviewed, and potentially subpoenaed to trial, because he has information that is certainly material and potentially favorable to Mr. Galvan's defense.

### 2. **Mr. Galvan Deserves the Right to Fully Investigate the Government's Allegations and Case Against Him**

The <u>Roviaro</u> Court stated that the Government's use of the conversation between the confidential informant and the defendant while riding in the vehicle

22-CR-6041-MKD-1

"particularly emphasize[d] the unfairness of the nondisclosure," and the "desirability of calling [the confidential informant] as witness, or at least interviewing him in preparation for trial was a matter for the accused rather than the Government to decide." The Court went on to conclude that the "**only person**" who could "controvert, explain, or amplify" the officer's reports was the confidential informant. Id. at 64.

Moreover, not disclosing the identity of such an important, potential witness could impede Mr. Galvan's ability to exercise his rights under the Compulsory Process Clause of the Sixth Amendment. The Compulsory Process Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witness in his favor." U.S. Const. amend VI. The right to compulsory process encompasses "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary." Washington v. Texas, 388 U.S. 14, 18–19 (1967).

**The Supreme Court has concluded that cross-examining officers who had either observed or overheard the events of an offense is "hardly a substitute for the opportunity to cross-examine the man who had been nearest to him and took part in the transaction."** Roviaro, 353 U.S. at 64. Even assuming, arguendo, that Mr. Galvan decided to testify in his own defense, it is his constitutional right to present other evidence on his behalf. That other evidence is the testimony of the only other person involved in the alleged offense, who is not a defendant in this case with a Fifth Amendment right against self-incrimination. It would be impossible for Mr. Galvan the only percipient witness – who is not a defendant – in his case to the stand and properly elicit highly relevant and material testimony if the confidential informant's identity is not disclosed. Thus, Court should require disclosure of the identity and contact information for the confidential informant, so the informant can be subpoenaed to

9

22-CR-6041-MKD-1

1  trial, because he has information that is certainly material and potentially

2  favorable to Mr. Galvan's defense. <u>Alternatively, if the Court is not prepared to</u>

3  <u>order disclosure of the confidential informant's contact information, the Court</u>

4  <u>should conduct an *ex parte in camera* interview of the informant pursuant to</u>

5  <u>Ninth Circuit caselaw.</u>

6
7
8  **B.    *IN CAMERA* HEARING IS REQUIRED WHEN DEFENDANT HAS ESTABLISHED IDENTIFICATION OF THE CONFIDENTIAL INFORMANT MAY BE RELEVANT AND HELPFUL TO THE DEFENSE**

9
10  The Ninth Circuit has stated that "where a defendant makes a 'minimal

11  threshold showing' that disclosure would be relevant to at least one defense" **an**

12  ***in camera* hearing is required**. *United v. Spires*, 3 F.3d 1234, 1238 (9th Cir.

13  1993) (emphasis added) quoting *Sai Keung Wong*, 886 F.2d 252, 256 (9th Cir.

14  1989). At an *in camera* hearing the court "must apply a balancing test, weighing

15  the public interest in encouraging citizens to inform the government about

16  criminal activity, against an accused's right to prepare a defense." *Amador-*

17  *Galvan*, 9 F.3d at 1417. The *Spires* court held that where a defendant makes a

18  showing that identification of the government's confidential informant may be

19  relevant and helpful to a possible defense a trial, "a district court abuses its

20  discretion if it fails to hold an *in camera* hearing on disclosure." *Spires*, 3 F.2d at

21  1239.

22  Mr. Galvan contends that he has made a minimal threshold showing that

23  disclosure of the confidential informant's identity is relevant to his theory of

24  entrapment and, therefore, requires that the Court hold an *in camera* hearing. In

25  *Amador-Galvan* the court stated that confidential informants that are percipient

26  witnesses can provide eyewitness testimony and might be able to provide

27  information that can weaken the government's case. *Id.* at 1416. Here, the

28  Government's confidential informant is **the only percipient witness** to the

10

22-CR-6041-MKD-1

*unrecorded and unmonitored* between the CS and Mr. Galvan that occurred "before" the first controlled call on January 31, 2022, which particularly relevant to a potential entrapment defense. *See* Gov. Response Attach. C at 3 ¶ 4. Mr. Galvan's showing that information possessed by the confidential informant regarding the alleged transaction and conversations between Mr. Galvan and the confidential informant prior to the alleged crime require this Court to order an *in camera* hearing regarding disclosure.

## IV.
## CONCLUSION

For the foregoing reasons, Mr. Galvan respectfully requests that the Court issue an order compelling the Government to produce the requested evidence and conduct an *in camera* interview of the CS to determine if the CS possesses information relevant to Mr. Galvan's defense that warrants disclosure of the CS's identity and contact information.

Dated: December 23, 2022

Respectfully submitted,

/s/ L. Marcel Stewart
L. MARCEL STEWART

/s/David Partovi
DAVID PARTOVI
Attorneys for Mr. Galvan-Trujillo

11

22-CR-6041-MKD-1